HERSHBERGER ET AL., APPELLANTS, *v.* AKRON CITY HOSPITAL ET AL.,
APPELLEES.

[Cite as Hershberger *v.* Akron City Hosp. (1987), 34 Ohio St. 3d 1.]

1

(No. 86-1544—Decided December 9, 1987.)

*Nukes & Perantinides Co., L.P.A., Paul G. Perantinides, Louise M. Mazur* and *James J. Gutbrod,* for appellants.

*Roetzel & Andress* and *Edward A. Digiantonio,* for appellee Akron City Hospital.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A., Robert C. Maynard, Matthew P. Moriarty* and *Janis L. Small,* for appellee Dr. Thomas M. Schlueter.

*Hershey & Browne, David R. Wilson* and *Robert J. Burns,* for appellee Dr. Michael E. Madaras.

HOLMES, J. The narrow question presented upon appeal is whether appellants' complaint was filed in a timely fashion. We first consider the cause of action alleged by appellant Rickey Hershberger, and whether his claim was timely filed pursuant to R.C. 2305.11(A) and/or 2305.11(B). For the reasons which follow, we reverse the judgments below and remand this cause to the trial court for further proceedings in accordance herewith.

I

Recently this court decided the cases of *Hardy* v. *VerMeulen* (1987), 32 Ohio St. 3d 45, 512 N.E. 2d 626, and *Gaines* v. *Preterm-Cleveland, Inc.* (1987), 33 Ohio St. 3d 54, 514 N.E. 2d 709. With regard to the question of whether appellant Rickey Hershberger's claim was timely filed pursuant to R.C. 2305.11(B), we hereby remand this cause to the trial court to decide this question giving consideration to our holdings in *Hardy* and *Gaines.*

II

In their presentations before this court, the parties did not brief or argue the R.C. 2305.11(A) issue separate and apart from the R.C. 2305.11(B) question. In the court of appeals, the R.C. 2305.11(A) issue was raised, briefed and argued, but the question was not decided in that court because of the court's finding that the claim was time-barred by R.C. 2305.11(B). In the trial court, the R.C. 2305.11(A) issue was raised, but the orders of the trial court granting appellees' motions only in-

dicate that the motions of appellees to dismiss were well-taken. No specific basis for the dismissal was given by the trial court, and neither R.C. 2305.11(A) nor 2305.11(B) was expressly relied upon.

The parties disputed as to the time when plaintiff discovered his cause of action. Since the complaint was filed in June 1985, the date of appellant's discovery becomes crucial for a determination as to whether appellant's cause of action is time-barred by R.C. 2305.11(A).

As the trial court considers the application of the one-year statute of limitations found in R.C. 2305.11(A), it must focus upon whether appellant discovered his injury within one year of filing the complaint. In the case of *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438, this court adopted the so-called "discovery rule" as it would apply to the accrual date for a cause of action for medical malpractice pursuant to the one-year limitation under R.C. 2305.11(A). In *Oliver,* the syllabus law stated that: "Under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered, *the resulting injury.* * * *" (Emphasis added.)

Although the syllabus refers to that which is to be discovered as "the resulting injury," the body of the opinion makes reference to that which would be discovered as "the malpractice." Accordingly, Justice William B. Brown, in the opening statement of the opinion, stated as follows: "The narrow issue raised by this appeal is whether a cause of action for medical malpractice pursuant to R.C. 2305.11(A) accrues upon the termination of the

medical relationship or upon the time of *the discovery of the malpractice."* (Emphasis added.) *Id.* at 112, 5 OBR at 248, 449 N.E. 2d at 439.

In cases that followed, the court made varying references to that which would be discovered by using alternatively the words "injury," "physical injury complained of," "resulting injury," or "malpractice." See *Clark* v. *Hawkes Hospital* (1984), 9 Ohio St. 3d 182, 183, 9 OBR 467, 468, 459 N.E. 2d 559, 561 (" 'discovered the resulting injury' " and "an injury which is the result of malpractice"); *Saunders* v. *Choi* (1984), 12 Ohio St. 3d 247, 248, 12 OBR 327, 328, 466 N.E. 2d 889, 890, at fn. 1 (" 'discovered' the alleged malpractice"); *Richards* v. *St. Thomas Hospital* (1986), 24 Ohio St. 3d 27, 28, 24 OBR 71, 72, 492 N.E. 2d 821, 823 (discovery of " 'the resulting injury' "); *Deskins* v. *Young* (1986), 26 Ohio St. 3d 8, 11, 26 OBR 7, 9, 496 N.E. 2d 897, 899 ("discovery of the alleged malpractice"); *Hoffman* v. *Davidson* (1987), 31 Ohio St. 3d 60, 62, 31 OBR 165, 167, 508 N.E. 2d 958, 961 (" 'the physical injury complained of' ").

In none of these cases was the term "injury" specifically defined for the purpose of determining the accrual date of any cause of action that might be maintained for malpractice. However, in the later case of *Richards,* and again referred to in *Hoffman,* this court suggested what the term "injury" did not mean, at least in the view of the majority. The court, in *Richards,* stated: "Thus, *Oliver* does not rely exclusively on the patient's actual discovery of the malpractice alleged; rather, the cause of action accrues when the physical injury complained of is or should have been discovered by the patient." *Richards, supra,* at 28, 28 OBR at 72, 492 N.E. 2d at 823; also quoted in *Hoffman, supra,* at 62, 31 OBR at 167, 508 N.E. 2d at 961.

There are, of course, a number of possible interpretations for the word "injury" which courts have utilized. A number of courts across the country have specifically held the accrual date for a cause of action for malpractice to begin at the date of the alleged negligent act or omission. See, *e.g., Landgraff* v. *Wagner* (1976), 26 Ariz. App. 49, 546 P. 2d 26, appeal dismissed (1976), 429 U.S. 806; *Dunn* v. *St. Francis Hospital, Inc.* (Del. 1979), 401 A. 2d 77. Some courts have adhered to the conclusion that the mere awareness of physical manifestations resulting from the act or omission, such as pain, non-function of bodily organ, or observed physical indicia which might include scar tissue, skin rash, etc., would suffice. See, *e.g., DeBoer* v. *Brown* (1983), 138 Ariz. 168, 673 P. 2d 912; *Gaddis* v. *Smith* (Tex. 1967), 417 S.W. 2d 577; cf. *Morrison* v. *Chan* (Tex. 1985), 699 S.W. 2d 205. See, also, *Williams* v. *General Motors Corp.* (M.D. N.C. 1975), 393 F. Supp. 387, affirmed (C.A. 4, 1976), 538 F. 2d 327; *Kelton* v. *District of Columbia* (D.C. App. 1980), 413 A. 2d 919; 1 Louisell & Williams, Medical Malpractice (1981) 13-22 to 13-23, at fn. 52, Section 13.07.

Other state courts have adopted the basic approach that the date of "injury" may only be ascertained by a factual determination of when the injured party became aware of, or should have become aware of, the extent and seriousness of his condition which would put a reasonable person on notice of the need for further inquiry as to the cause of such condition. See, *e.g., Graham* v. *Hansen* (1982), 128 Cal. App. 3d 965, 180 Cal. Rptr. 604; *Christ* v. *Lipsitz* (1979), 99 Cal. App. 3d 894, 898, 160 Cal. Rptr. 498, 501; see, also, *Dawson* v. *Eli Lilly & Co.* (D.D.C. 1982), 543 F. Supp. 1330, 1333; *Grigsby* v. *Sterling Drug, Inc.* (D.D.C. 1975), 428 F. Supp. 242, affirmed (C.A.D.C. 1976), 543 F. 2d 417,

certiorari denied (1977), 431 U.S. 967; *United States* v. *Kubrick* (1979), 444 U.S. 111. In these cases, it would seem that the basic thrust of the standard is that the knowledge of facts rather than discovery of legal theories is the test. The inquiry is thus whether the plaintiff has information of circumstances, obtained with or without additional medical evaluations, sufficient to put a reasonable person on inquiry, or had the opportunity to obtain knowledge from sources open to his or her investigation, concerning the cause of the condition. Accordingly, it has been stated that: "* * * [F]acts and events which inform a person that something is wrong, or should be looked into, are usually recognizable by the ordinary person. One example is pain. * * * It is the occurrence of some such cognizable event rather than knowledge of its legal significance that starts the running of the statute of limitations." *McGee* v. *Weinberg* (1979), 97 Cal. App. 3d 798, 804, 159 Cal. Rptr. 86, 90.

Finally, several courts have asserted a preference for the "legal injury" concept which definition includes all essential elements of a claim for medical malpractice. See, *e.g., Massey* v. *Litton* (1983), 99 Nev. 723, 669 P. 2d 248; *Yamaguchi* v. *Queen's Medical Center* (1982), 65 Hawaii 84, 648 P. 2d 689; *Foil* v. *Ballinger* (Utah 1979), 601 P. 2d 144, 147.

In considering the foregoing standards, we note that any beginning point for the statute of limitations which is based upon the date of an act or omission and/or physical manifestations of an injury, such as pain, swelling, etc., would require a claimant to immediately file suit against the physician whether or not the patient had any reason to associate the physical injury with the prior act. Consequently, such standards encourage the filing of unfounded lawsuits. They also foster a breakdown in the relationship between physician and patient, causing each to be viewed suspiciously by the other. Under such circumstances, a physician would have every motive to withhold information which, while revealing a mistake in past treatment, might also be vital for the patient to intelligently evaluate the advisability of future treatment. We would, insofar as possible, remove such barriers to openness and mutual confidence. Accordingly, we do not accept the first two of the above approaches.

The concept of "legal injury" as initiating the running of the statute also is not without problems. Legal theories are ordinarily not within the province of the average layman. Furthermore, to utilize "legal injury" might effectuate a complete undermining of the discovery rule since anyone could allege ignorance of his legal rights. It would also be most difficult to refute such an allegation, whether or not true, without proceeding to full trial. An issue of fact could be compounded unless objective proof, which would ordinarily not be available, could sufficiently infer such subjective knowledge or belief. It is therefore the knowledge, actual or inferable, of *facts,* not legal theories, which initiates the running of the one-year statute of limitations.

We find that the better construction of the term "injury" is set forth in the third approach. Therefore, in a medical malpractice action, for the purposes of determining the accrual date in applying the statute of limitations under R.C. 2305.11(A), the trial court must look to the facts of the particular case and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his condition, which, of course, may occur without the necessity of further medical consultation; whether the injured party was aware, or should have been aware, that such condition was

related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition.

## III

The claim for loss of consortium filed by Hershberger's spouse, Brenda, requires a separate analysis. It is well-settled that a spousal claim for loss of consortium arising from alleged medical malpractice is governed by the time constraints set forth in R.C. 2305.09(D).[1] See *Corpman* v. *Boyer* (1960), 171 Ohio St. 233, 12 O.O. 2d 368, 169 N.E. 2d 14, paragraph two of the syllabus; *Holzwart* v. *Wehman* (1982), 1 Ohio St. 3d 26, 1 OBR 63, 437 N.E. 2d 589; *Amer* v. *Akron City Hosp.* (1976), 47 Ohio St. 2d 85, 1 O.O. 3d 51, 351 N.E. 2d 479.

In the instant case, the spousal claim for consortium contained within the complaint[2] fails to assert when the patient's alleged injury began to deprive her of her husband's "society, comfort and companionship." The court of appeals apparently presumed that any claim for loss of consortium would have occurred in October 1977 (the date of the surgery), and hence the claim became time-barred under R.C. 2305.09(D) sometime in October 1981. Such an analysis presumes that the loss of consortium immediately arose on the date of the alleged malpractice. We find that a more consistent and logical approach requires that the statute of limitations for a loss of consortium claim must begin on the same date that the statute of limitations for the spouse's medical malpractice claim begins to run.

Accordingly, we reverse the determination of the court of appeals pertaining to Brenda Hershberger's consortium claim and remand that issue to the court of common pleas for further proceedings. On remand Brenda Hershberger must establish medical malpractice by at least one of the three appellees and, furthermore, that the consortium claim did not arise, at the latest, until four years preceding the filing of the complaint. A question of fact will therefore be presented to the trial court.

For the foregoing reasons, the judgment of the court of appeals is reversed and the cause is hereby remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SWEENEY, Acting C.J., MARKUS, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

---

[1] R.C. 2305.09(D) provides, in relevant part:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

"* * *

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code."

[2] The consortium claim in the complaint provided:

"THIRD CLAIM FOR RELIEF

"10. The Plaintiff incorporates by reference all allegations contained in Counts one (1) through nine (9) of the complaint.

"11. That all time herein mentioned, the Plaintiff BRENDA HERSHBERGER was the wife of the Plaintiff RICKEY HERSHBERGER, and for her complaint states that she has been deprived of the society, comfort, and companionship and consortium of the Plaintiff RICKEY HERSHBERGER."

SWEENEY, J., sitting for MOYER, C.J.

MARKUS, J., of the Eighth Appellate District, sitting for SWEENEY, J.