SPARKS et al., Appellants,

v.

BLANCHARD VALLEY HOSPITAL et al., Appellees.

[Cite as *Sparks v. Blanchard Valley Hosp.* (1991), 72 Ohio App.3d 830.]

Court of Appeals of Ohio,
Hancock County.

No. 5-89-27.

Decided March 13, 1991.

*Williams, Jilek & Lafferty Co., L.P.A.,* and *David M. Mohr,* for appellants.
*Betts, Miller & Russo* and *Stephen C. Betts,* for appellees.

---

EVANS, Judge.

This is an appeal from a judgment of the Court of Common Pleas of Hancock County granting the defendant-appellee's motion for summary judgment based on the statute of limitations set forth in R.C. 2305.11(B)(1) thereby terminating the plaintiff's medical malpractice action.

On March 16, 1978, in Findlay, the plaintiff-appellant, William A. Sparks (hereinafter "plaintiff"), slipped and fell, cutting his shoulder on broken glass. At the Blanchard Valley Hospital (hereinafter "BVH"), a nurse took the

plaintiff's case history, including a recounting of how he cut his shoulder. After a nurse cleaned the cut, the defendant-appellee, Leroy L. Schroeder, M.D. (hereinafter "defendant"), stitched it up and told the plaintiff to return in a few weeks to have the stitches removed. The plaintiff, however, spent part of each year working in West Virginia. Before the stitches were ready to be removed, he had returned to West Virginia. Thus, he did not return to see the defendant and he subsequently removed the stitches himself.

Three months later, the plaintiff's shoulder still hurt so he went to see Dr. Yojnich in West Virginia. The plaintiff told the doctor that he had previously cut his shoulder, but he did not mention that he cut it by falling on glass. Dr. Yojnich diagnosed the condition as bursitis and prescribed a cream to be applied to the shoulder. The plaintiff did not follow-up his treatment with Dr. Yojnich.

Approximately eight years later, having suffered intermittent pain in his shoulder during certain activities, the plaintiff consulted with Dr. Marshall in Tiffin, Ohio. Initially, Dr. Marshall diagnosed bursitis and prescribed more cream, but the pain persisted. A few weeks later, Dr. Marshall took X-rays and discovered foreign bodies in the shoulder which, upon removal through surgery, proved to be pieces of glass.

On June 17, 1988, the plaintiff and his wife filed suit against the defendant and BVH alleging negligent treatment by the defendant in BVH's emergency room. BVH and the plaintiff's wife were later dismissed as parties. The defendant then filed a motion for summary judgment which the court sustained and dismissed the case. The plaintiff timely appealed to this court.

The plaintiff asserts as his first two assignments of error:

"The court erred in granting summary judgment against plaintiff as issues of material fact exist which require resolution by a jury.

"The court erred in granting judgment for defendant as summary judgment should not be granted on speculation as to what may have occurred if a party had acted in a different manner."

These assignments of error focus on the propriety of the granting of summary judgment and will be consolidated for review.

The rule for the granting of summary judgment states:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from

such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." Civ.R. 56(C).

The trial court had before it the pleadings and briefs of the parties and the depositions of the plaintiff and a treating surgeon.

The court stated in its entry:

"Had plaintiff returned for removal of his stitches as ordered by the treating physician, the removal would probably have been accompanied by at least a reasonable examination of the wound, which might have turned up the existence of the foreign bodies therein.

"Had the plaintiff returned for examination by Dr. Yojnich, after the doctor's prescribed treatment failed to ease his pain, further examination would probably have revealed the existence of the glass particles in plaintiff's shoulder.

"Had plaintiff fully disclosed the original treatment of Dr. Schroeder and the nature of the injury to either Dr. Yojnich or Dr. Marshall, this might have triggered an earlier and more extensive examination and discovery of the plaintiff's problem."

The court continued by saying that "common sense" would dictate that the plaintiff should have followed the above-listed course of treatment. Thus, his failure to be more diligent caused this action to be barred by the statute of limitations.

The plaintiff, however, argues that the court did not construe the facts most strongly in his favor, the non-moving party. Also, the court's speculation as to what should or might have happened was improper when considering a motion for summary judgment.

On September 15, 1989, when the trial court filed its judgment entry in the case, *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, was a recent pronouncement by the Supreme Court of Ohio on the appropriate analysis to be used to determine when the statute of limitations begins to run in a medical malpractice case. The court announced a three-prong analysis to be used by trial courts to determine the accrual date of the malpractice action in applying the statute of limitations:

(1) when the injured party became aware, or should have become aware, of the extent and seriousness of his condition;

(2) whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and

(3) whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition.

This analysis calls for the trial court to determine when the injured party should have become aware of his condition under the facts of the case. Here it appears that the court determined the course of conduct that a reasonable person would have followed and then concluded that had this plaintiff done those things that the court thought a reasonable person would have done he would have discovered his cause of action long before he did. This, however, is not the approach. The trial court must take the facts as they are and apply the three-prong test without speculation about what the injured party should have done.

We find error on the part of the trial court in failing to construe the facts most strongly in favor of the non-moving party and further error on the part of the trial court in applying the *Hershberger* test to the assumed conduct of a reasonable patient rather than the actual activities of this plaintiff.

Accordingly, we sustain the first and second assignments of error.

■ The plaintiff asserts in his third assignment of error:

"The court erred in granting summary judgment against the plaintiff as the statute of limitations in a medical claim does not start to run where the patient has consulted with physicians after the negligent act of the defendant and is not advised that his condition was proximately related to prior treatment by the defendant; but is related to an independent, non-related disease."

This assignment of error states the issue too broadly. A person need not be "advised" that a condition is proximately related to prior treatment. Such a requirement goes beyond the test in *Hershberger, supra.* But we will treat the assignment as asserting error in granting summary judgment against the plaintiff.

After *Hershberger, supra,* the Supreme Court announced *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93, in which *Hershberger* was explained as follows:

"The 'extent and seriousness of his condition' language of the test set forth in *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, paragraph one of the syllabus, requires that there be an occurrence of a 'cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the

cognizable event does or should place the patient on notice of the need to pursue his possible remedies."

A review of the facts of this case discloses no cognizable event which should have led this plaintiff to believe that his condition was related to a medical procedure. Several months after the medical procedure in question the plaintiff went to a physician in a city where he was then employed because the shoulder which he had cut previously continued to bother him. He was given a diagnosis of bursitis with a cream to be applied to the shoulder. Certainly there is nothing here that would constitute a cognizable event. If anything this diagnosis would prevent the plaintiff from realizing that his condition was related to a prior medical procedure. What is more reasonable than a diagnosis of bursitis in a shoulder which has been recently injured? We find this applicable comment in *Herr v. Robinson Memorial Hospital* (1990), 49 Ohio St.3d 6, 9–10, 550 N.E.2d 159, 162:

"The cognizable event analysis allows a patient to reasonably rely on his physician's assurances while placing a continuing duty on the medical profession to act with the requisite skill and care."

Over the intervening years plaintiff experienced pain in his shoulder from time to time depending primarily on the activities he was required to perform at work. Whatever the pain was, plaintiff controlled it with non-prescription medication. Thus, we conclude that pain alone could not be the cognizable event in this case.

Without a cognizable event to trigger the statute of limitations we conclude that it was error for the trial court to grant summary judgment on the ground that this action was barred by the statute of limitations.

The third assignment of error is sustained.

Having found error prejudicial to the plaintiff in the particulars assigned and argued, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

HADLEY and SHAW, JJ., concur.